WHITMARSH v. PENNSYLVANIA R. CO.

Civil Action No. 3890.

District Court, E. D. Pennsylvania.

Aug. 21, 1945.

B. Nathaniel Richter, of Philadelphia, Pa., for plaintiff.

Philip Price, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This action was brought under the Federal Employers' Liability Act, 35 Stat. 65 (1908), as amended, 45 U.S.C.A. § 51 et seq., and under the Safety Appliance Act, 27 Stat. 531 (1893) as amended, 45 U.S.C.A. § 1 et seq., to recover damages for personal injuries sustained by the plaintiff on May 4, 1944, in the course of his employment as a brakeman for the Pennsylvania Railroad, defendant.

One of the defenses interposed was a release of the claim for damages executed, allegedly, by the plaintiff on May 29, 1944. The validity of this release was challenged by plaintiff on the ground of fraud in its execution or procurement.

The case was tried before the Court and a jury, and, at the close of testimony, defendant moved for a directed verdict under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The motion was denied and the evidence was submitted to the jury. The jury, however, failed to agree and was discharged. Thereafter, pursuant to Civil Rule 50(b), the defendant filed a motion for judgment in accordance with its motion for a directed verdict, and this motion is now before the Court for consideration.

Plaintiff contends, in brief, that because of the injuries resulting from the accident, he was, at the time the release was signed, of irrational mind and incapable of understanding the release, and further, that this was known to the defendant's claim agent, who, by false representations, perpetrated a fraud upon him.

For the purposes of its present motion, defendant relies upon the asserted failure of the plaintiff's evidence to sustain the burden of setting aside the release, and, in effect, seeks to have this Court declare the release binding as a matter of law.

██ First, a word may be said about the applicable law. Plaintiff's suit rests on asserted rights granted by federal laws which, it is well settled, require uniform interpretation, so that local law is inapplicable. Second Employers' Liability Cases, (Mondou v. New York, N. H. & H. R. Co.) 1912, 223 U.S. 1, 55, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; Bailey v. Central Vermont Ry., Inc., 1943, 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444. Moreover, this requirement of uniformity extends to the type of proof necessary for judgment, for the question of burden of proof is a matter of substance. New Orleans & Northeastern R. Co. v. Harris, 1918, 247 U.S. 367, 371, 38 S.Ct. 535, 62 L.Ed. 1167; see Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 244, 63 S.Ct. 246, 87 L.Ed. 239.

██ An examination of the cases discloses that under the federal practice, where a party seeks to nullify a written instrument executed by him on the ground of fraud, his evidence must be clear, cogent, convincing and certain, or, as it is frequently stated, he must produce "clear, unequivocal, and convincing" proof, for fraud is never presumed. Lion Oil Refining Co. v. Albritton, 8 Cir., 1927, 21 F.2d 280, 282; Atlantic Delaine Co. v. James, 1876, 94 U.S. 207, 214, 24 L.Ed. 112; New York Life Insurance Co. v. Kwetkauskas, 3 Cir., 1933, 63 F.2d 890, 891; Merwin v. New York, New Haven & Hartford R. Co., 2 Cir., 1933, 62 F.2d 803, 804. In passing, it may be observed that the Pennsylvania rule, although phrased differently (clear, precise and indubitable), is the equivalent of the federal rule, and has been so applied. Rader v. Lehigh Valley R. Co., 3 Cir., 1928, 26 F.2d 73; McDonnell v. General News Bureau, 3 Cir., 1937, 93 F.2d 898. When such terms " 'are used in defining the requisite proof of a particular fact to be made out by oral testimony, it is meant that it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, that they narrate the details exactly, and that their statements are true.' " McDonnell v. General News Bureau, supra, 93 F.2d at page 901.

██ On a motion such as that in this case, the Court must view the testimony from a standpoint most favorable to the plaintiff. Viewed in that light, his version of the circumstances surrounding the execution of the release is as follows:

On May 29, 1944, twenty-five days after plaintiff allegedly sustained his injuries, one Harold Clark, claim agent for the defendant, called the plaintiff on the phone and asked to meet him at the depot in Tyrone, Pennsylvania. Plaintiff replied that he had been in bed, sick, for three days and did not wish to meet Clark at that time, but Clark persuaded him to go. At the depot, plaintiff told Clark of his troubles, and Clark expressed his sympathy. They then went to the waiting room of the doctor's office in the depot. Clark asked the plain-

tiff whether he would consider a settlement, but the plaintiff refused because he did not "feel good" and did not know whether he was going to get better or worse. Plaintiff also told Clark, in response to the latter's question, that he could not make ends meet. Then Clark, considering plaintiff had missed twenty-five days' work, offered him $250.00 as payment for wages, until it could be determined whether plaintiff was getting better, and thereupon Clark gave him a check in that amount. As the plaintiff was about to leave, Clark called him back saying he needed a receipt. The plaintiff waited while Clark typed out a paper which he then asked plaintiff to sign. Plaintiff testified that at this time he was suffering a splitting headache, felt dizzy, and his eyes seemed to be coming out of his head. He bent over to read the paper, but felt as though he were "going to pass out", and had to sit down. He could not read the paper because the print seemed blurred, and told this to Clark. Plaintiff testified he did not wish to sign anything he did not know about, but Clark told him that the paper was merely a receipt. Clark gave the plaintiff a pen, put a checkmark where he was to sign, and held his thumb on the paper telling plaintiff to sign where he had placed his thumb. Although the plaintiff signed, he testified that he did not know that it was a release, that he took Clark's word because Clark acted friendly and sympathetically and that he trusted him. Plaintiff further testified that no one else was present at the time he signed the paper.

Following plaintiff's execution of the document, Clark took him to the door and told him he would contact him later to discuss a settlement of the case. The plaintiff then walked three blocks to the bank and cashed the check. He testified that he felt "dizzy" on the street.

■■ It is my opinion that plaintiff's testimony is clear and exact. While the oral testimony of Clark and Simms submitted by the defendant on the issue of fraud was in direct contradiction to the testimony of the plaintiff, such contradiction goes primarily to the credibility of the witnesses; whether the alleged facts existed, where such facts are denied, is plainly a question for the jury. On the other hand, the province of the Court in this case is to determine whether the alleged facts are such as would support a verdict by the jury in plaintiff's favor. See Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; McKenzie-Hague Co. v. Carbide & Carbon Chemical Corp., 8 Cir., 1934, 73 F.2d 78, 85; Winget v. Rockwood, 8 Cir., 1934, 69 F.2d 326.

■■ Plaintiff's testimony that he had no intention of settling his case, that he understood that the check was in payment for time lost and that the check was meant to enable him to meet his expenses, and further that he was both physically and mentally ill prior to and during the meeting and was unable to read, amounts to clear evidence on which a jury could properly find that the plaintiff was not of such rational mind and intelligence to understand the written release and that the instrument was procured by fraud. It is true that the cases abound in the statement that failure to read a contract, where one can, or failure to obtain a reading of it, where one cannot read, amounts to negligence estopping denial. However, it is equally true that this rule is inapplicable where the failure is due to the fraud, artifice or imposition of the other party. See Whitney Co. v. Johnson, 9 Cir., 1926, 14 F.2d 24, certiorari denied 273 U.S. 734, 47 S.Ct. 242, 71 L.Ed. 864. In my opinion, the facts alleged by the plaintiff in this case, in view of the nature of the injuries which he sustained and the medical testimony as to dizziness, etc. would support a conclusion that the plaintiff was not of such rational mind and of sufficient intelligence to understand the nature of the written release.

■ Insofar as plaintiff's subsequent cashing of the check is concerned, I think that its chief value lies in the weight a jury might attach to it as bearing on the question of ratification, and as reflecting on the matter of his difficulties. See Capital Traction Co. v. Sneed, 1928, 58 App.D.C. 141, 26 F.2d 296, 301.

■ To conclude, it is my opinion that this case is one for the jury, whose duty it is to pass upon the truthfulness of the witnesses and the weight to be given their evidence. This is especially true here in view of the recent statement by the United States Supreme Court in Blair v. Baltimore & Ohio R. Co., 1945, 323 U.S. 600, 602, 65 S.Ct. 545, 546, that, "To deprive railroad 'workers of the benefit of a jury

trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.' Bailey v. Central Vermont R. Co., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444."

Accordingly, defendant's motion for judgment is denied.