CALLEN v. PENNSYLVANIA R. CO.
No. 9263.

Circuit Court of Appeals, Third Circuit.
Argued April 8, 1947.

Decided July 28, 1947.

As Amended Aug. 6, 1947.

See, also, 5 F.R.D. 83.

Philip Price and H. Francis DeLone, both of Philadelphia, Pa. (Barnes, Dechert, Price, Smith & Clark, of Philadelphia, Pa., on the brief), for appellant.

D. J. Farage, B. Nathaniel Richter and Joseph S. Lord, III, all of Philadelphia, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a plaintiff's judgment in a personal injury suit under the Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51.

On December 14, 1944, plaintiff-appellee was a brakeman employed by defendant-ap-

pellant. In jumping from the stirrup of a tender then being pushed by an engine, and about to be coupled to some standing cars, appellee claimed to have hurt his back. He was apparently able to complete his work for that day but after he arrived home his back was sore. He "thought all the while it is just a little strain." He did not go to work again until about five days later. On the first day of his return he was forced to leave work early as "it kept getting worse." He then saw a Dr. Sheets who gave him a back injection and taped him. Later "it started to get bad" and he received fifteen or sixteen treatments from Dr. Fair, a chiropractor. During that period he had "terrible" pain in his sacroiliac area.

On February 14, 1945, he went to see the appellant's claim agent, Veidt, at Toledo. He brought with him a report on his condition from the chiropractor. This described his injury as "Twisting of body producing nerve pressure and inflammation in sacroiliac and lower lumbar region of spine." The prognosis was "Leaves a weakness which is more readily increased and makes him more susceptible to recurrence." After appellee gave the agent a statement, the latter took him to an X-ray clinic where X-rays were taken of his back. Appellee received no report as to these, "Only what I gathered from Mr. Veidt." When appellee and Veidt returned to the latter's office, according to appellee, Veidt said to him, "You got a lot of gall coming in here, asking for anything like that and there is nothing wrong." Appellee accepted $250 from Veidt and signed a release. He said he was influenced in accepting that sum by "The fact that he [Veidt] said there was nothing wrong with me and I could go back to work." He later said as to Veidt, "I thought he knew what he was talking about." Veidt testified that he based his idea of settlement on the lack of negligence or liability, saying with reference to settlement that "I wasn't concerned with his injuries." He added to this, "Except by his own medical report. That is what I was basing it on. I was basing my settlement on the liability more than on the injury." He stated that at the time of the settlement, "I didn't know he had the injuries the doctors described in

this court room." He also said, "I wasn't concerned with the injury; I was concerned with the liability and I settled on the basis of no liability."

Dr. Sheets examined appellee towards the latter part of December, 1944. He found appellee suffering from sacroiliac subluxation and strapped him. Appellee again saw this doctor in March, 1945, and continued visiting him until the last of June, 1945. During that time the doctor obtained a sacroiliac belt for him. The doctor next saw appellee in October, 1945, and treated him to the date of the trial, May 31, 1946. The doctor said Callen was permanently disabled, about "fifteen to twenty per cent below par" with some psychogenic change. The only other medical witness in the case, Dr. Jepson, also testifying on behalf of the appellee, was of the opinion that the latter had "a chronic low back strain, with limited function of around fifteen per cent." The doctor refused to commit himself as to whether Callen's back condition was permanent.

 Appellant's principal contention is that the Trial Judge did not properly present the release question to the jury. There was no allegation of fraud against the railroad with reference to the release which by its terms absolved the railroad from all claims of Callen arising out of the particular accident. Callen testified that he was influenced in executing it by claim agent Veidt's statement that there was nothing wrong with him. Veidt as a witness said that at the time the document was signed, he did not know Callen had the injuries the doctors described in the court room. There was thus in the trial some evidence of mutual mistake regarding Callen's injuries, an important element in the settlement. That evidence in order to void the release, had to be clear, unequivocal, and convincing. Chicago & N. W. Ry. Co. v. Wilcox, 8 Cir., 116 F. 913, 914; Restatement of Contracts, Sections 502, 511. Whether the testimony here considered fulfilled those conditions was for the jury to pass upon under the guidance of the Court's instructions.

In his charge the District Judge commented at some length upon the release. He first said, "both sides agree that that

release was not in contemplation of any sort of permanent injury." Later referring to Veidt's settlement authority being limited to $500, he said, "I think if it had been known that this man had these permanent injuries Mr. Veidt would not have handled the matter." The Court then stated:

"Now, I am going to consider that release as binding to the amount of $250.00, and if you find a verdict for the plaintiff you will deduct that from any amount you would otherwise give him. The $250.00 he got for expenses and medical bills and services that he obtained up to that time; and if you find that he is entitled to a verdict at your hands I will ask you to deduct that $250.00 from any amount you otherwise would award him, because that is what he agred to take toward that particular phase of his claim, and of course he would not and does not ask, as I understand it to be excused from that,—he admits that he got it, and there it is.

"The release, as I have told the attorneys for both sides, I do not consider binding insofar as it applies to his permanent injuries, because the Pennsylvania Railroad certainly didn't know he was permanently injured, and if they did know he was permanently injured and settled for $250.00 the comment of the Court might be entirely different.

"Now, you heard the doctors' testimony as to his injuries. I am going to leave you to pass judgment upon how far this man is impaired, whether partially impaired, whether partially impaired permanently, or whether he is impaired in his earning capacity at all. I am going to leave that entirely to you."

Following the above, the Court charged No. 5 of appellant's points which reads: "5. In order to avoid a release on the ground of mutual mistake of fact as to the injuries intended to be included in said release, such mistake must relate to an existing fact and not merely to the future result or progress of an existing and known injury."

No. 6 was charged as follows:

" '6. If you believe that at the time the Plaintiff executed the release he had been advised by his own doctor that he had not been cured and that further treatments would be required, in that event the Plaintiff was not misled by anything done by the Defendant and you must accordingly find that the release is binding and valid and your verdict must be for Defendant.'

"Members of the jury, I affirm that point with this explanation, if you believe that at the time the plaintiff executed the release he had been advised by his own doctor that he had not been cured and that he believed he had not been cured—I don't know what evidence there is, I will leave that entirely to you, as to what the doctors have advised this man at the time he consulted with Mr. Veidt, that he had not been cured. But, he did state he didn't know he was permanently injured, and Mr. Veidt said he didn't know he was permanently injured, and they both settled on the basis of loss of wages and expenses and because Mr. Veidt felt there was no liability and that it was just a local matter. With that explanation, I affirm that point. If he believed and he knew full well he was injured the way he is today and he made a settlement for $250.00, then he would be bound by it."

Numbers 7 and 8 were charged. These read:

" '7. If you believe that the execution of the release was based partly if not entirely upon the question of liability and not upon any representations as to the extent of the injury, the release is binding upon the plaintiff and your verdict must be for the defendant.

'8. In order to avoid the binding effect of a release by reason of an alleged mutual mistake, such mistake must relate to a present and existing fact and not merely to matters of opinion.' "

 Prior to charging appellant's points above quoted, the District Judge had advised the jury that the release was not binding in so far as it applied to appellee's permanent injuries. This was palpable error under the facts relating to the release and entirely aside from the Court's incorrect assumption that there was no dispute about the permanency of the injuries. Thereafter, in charging appellant's points,

though the Judge made a conscientious effort to remedy the situation, he failed to tell the jury that clear and convincing evidence of mutual mistake of a material fact was needed in order to set the release aside. That type of instruction was especially important in view of the confusion which had been created over the status of the release. Had a point for charge covering this been among the fourteen submitted on behalf of the appellant, it probably would have solved the difficulty, but the failure to suggest such point does not excuse the omission from the charge of the law of that phase of the case which should have been charged of the Court's own motion.

 Though the permanency of appellee's injuries was one of the controverted issues both in the pleadings and at the trial, the District Judge in his charge mistakenly advised the jury in the above noted instructions that appellee had been permanently injured and that this was conceded by the appellant. After so doing, the Court said to the jury, "I am going to leave you to pass judgment upon how far this man had been impaired, whether partially impaired, whether partially impaired permanently or whether he is impaired in his earning capacity at all. I am going to leave that entirely to you. * * * I am going to leave you to say in your experienced judgment just how far he has been impaired."

Again, while the Court obviously made a sincere attempt to present to the jury the real status of the permanent injury claim, we do not think that the rather vague language used actually eliminated the harm of the previous positive statements. The amount paid in settlement had been $250. The verdict was in the sum of $24,990. The wide disparity between the two figures may or may not be some indication that the jury did not understand that the Trial Judge meant to contradict what he had said at least three times in the same charge. In any event it does seem that the Court's final instruction regarding the injuries was hardly sufficient to fully counteract the unfair result of the inadvertent misstate-

ments of appellant's position in this respect.

We have examined the remaining two points urged by the appellant. We do not find any substantial error in connection with them.

The judgment of the District Court is reversed and the matter is remanded to the District Court for a new trial.