**NEFF v. PENNSYLVANIA R. CO.**
Civ. No. 6352.

District Court, E. D. Pennsylvania.
March 22, 1948.

Richter, Lord & Farage, of Philadelphia, Pa. (Elias Magil, of Philadelphia, Pa., of counsel), for plaintiff.

Barnes, Dechert, Price, Smith & Clark, of Philadelphia, Pa. (Joseph S. Clark, Jr. and Robert M. Landis, both of Philadelphia, Pa., of counsel), for defendant.

FOLLMER, District Judge.

This action was brought under the Federal Employers' Liability Act, 35 Stat. 65, April 22, 1908, as amended, 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries sustained by the plaintiff on June 22, 1945, in the course of his employment as a machinist's helper for the Pennsylvania Railroad Company, the defendant. The case was tried before the Court and a jury and a verdict returned in favor of the plaintiff in the sum of $12,-500.

Defendant moves for a new trial and in support thereof assigns a number of reasons, most of which may be summarized under three general heads, namely,

1. The trial judge erred in overruling defendant's motion to strike the testimony of plaintiff's medical witnesses, Drs. Jep-

534

son and Farrell, and in refusing defendant's points for charge Nos. 10 and 11 instructing the jury to disregard their testimony.

2. The verdict was against the evidence and the weight of the evidence.

3. The Court erred in requiring defendant to furnish plaintiff with copies of his own statements.

Defendant argues that the testimony of Dr. Jepson and Dr. Farrell should have been stricken and removed from the consideration of the jury for the reason that in their testimony they failed to establish any causal relationship between the alleged accident and the physical condition of the plaintiff.

■ Defendant directs the Court's attention to Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that evidence shall be admissible in the federal court if admissible under United States statutes or under theretofore existing rules of federal equity courts or under the law of the state where the federal court sits. Defendant further contends that under the Pennsylvania law the evidence should have been excluded on the apparently settled rule in Pennsylvania that where medical testimony is necessary to establish a causal relationship between an alleged accident and injuries claimed to have arisen therefrom, it must be explicit and positive; that an expert brought forward by a plaintiff to establish this fact must testify that in his professional opinion the consequences for which damages are claimed did result from the cause alleged; that the Pennsylvania rule should have been applied and the testimony of Drs. Jepson and Farrell excluded.

■ Defendant in its reference to Rule 43(a) overlooks the last two clarifying sentences thereof, and which, in my opinion, exert a controlling influence in the proper determination of this question.[1]

■ Moore (3 Moore, Federal Practice, Sec. 43.01, P. 3063) concludes his appraisal of the standards for the admissibility of evidence under the new rules as follows, "But it is subdivision (a) of Rule 43 that revolutionizes federal evidence, and in general places admissibility upon the sole basis of relevancy and materiality." [2]

Judge Learned Hand in Pfotzer v. Aqua Systems, Inc., 2 Cir., 162 F.2d 779, 785 makes this evaluation, "Where there is a doubt as to the competency of evidence, * * * Rule 43(a) * * * admonishes us to admit it rather than to exclude it; * * *."

■ As a purely substantive proposition, the courts have uniformly held that the Federal Employers' Liability Act was designed to be liberally applied for the protection of railroad and other employees.[3] Entirely aside from any consideration of Rule 43(a), if the Act is to be liberally applied for the protection of all eligible employees, certainly the first essential ingredient in its application is uniformity.[4] The Act cannot mean one thing in one state and something else in another state. If such be true as to the interpretation of the Act, by the same token that same uniformity is essential as to the method, the type and the quantum of proof required to qualify for relief under the Act.

---

[1] "In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."

[2] For an illuminating article on the scope of this rule see Note 46 Columbia Law Review 267 (1946).

[3] Lukon v. Pennsylvania Railroad Co., 3 Cir., 131 F.2d 327.

[4] As to the applicable law, it was pronounced for this District in Whitmarsh v. Pennsylvania Railroad Co., 3 Cir., 61 F.Supp. 850, 852, "Plaintiff's suit rests on asserted rights granted by federal laws which, it is well settled, require uniform interpretation, so that local law is inapplicable." See also Irish v. Central Vermont Ry., Inc., 2 Cir., 164 F.2d 837; Jacobs v. Reading Company, 3 Cir., 130 F.2d 612.

Plaintiff claims that in the operation of a defective wrench his right arm made a swift upward thrust resulting in the fracture of the second and fourth lumbar vertebrae and a torn semi-lunar cartilage of the left knee, which permanently disabled him.

Dr. Jepson, in answer to a hypothetical question, testified that if there had been no preceding accident and no preceding evidence of involvement of the second and fourth lumbar vertebrae, and no preceding accident or evidence of injury to the knee, such an act, in his opinion, could have caused the injuries described.[5] On cross-examination, in answer to a second hypothetical question which assumed the state of facts detailed in the first hypothetical question but eliminated any twisting of the knee, the doctor stated that in his opinion the wrench incident was not the cause of the derangement of the knee, and that, although it "may" be unlikely, it "is" possible that the compression fracture of the lumbar vertebrae could, under those circumstances, have been sustained by the slipping of the wrench.[6]

Dr. Farrell, in answer to a hypothetical question, gave it as his opinion that the accident was not the cause of the fractures but was the cause of the plaintiff's symptoms described in the question;[7] that the injury to the knee was "the result of trauma, the result of some trick or something of that nature;" that such an injury was of a disabling character.[8]

In answer to a special interrogatory submitted by the Court, the jury found that the plaintiff did suffer an injury while at work which permanently *aggravated* a then existing condition of his back and left knee. They did not find that the injury so suffered was the sole *cause* of his condition or that the injury *caused* the condition to his back or left knee.

In my opinion, the jury in its special findings completely answers defendant's objection to the testimony of Dr. Jepson and Dr. Farrell, and its insistence that the same should have been excluded by the Court. The findings of the jury are thoroughly consonant with the opinion of Dr. Farrell that the accident did not cause the injury but rather an aggravation of a pre-existing condition.

---

[5] In this case the Court and jury were regaled with an array of seven medical experts, two for the plaintiff and five for the defendant. The testimony of Dr. Jepson that the wrench incident, (coupled with his frank admission where the hypothetical question did not include the twisting of the knee) "could have caused the injuries described" (Transcript of Trial Testimony, Pages 146, 147) provided a refreshing interlude from the dogmatic assertiveness that is apt to be elicited from experts who are too prone to become partisans of a side rather than of a scientific opinion. See excellent discussion of this matter in Wigmore on Evidence, Vol. II, Sec. 563, P. 644.

[6] Transcript of Trial Testimony, Page 158, "Q. Let's change that, Doctor. It went up as far as it would. There is nothing about his leaving his feet; nothing about hitting his knee, or slipping. Now in that state of the record would you want to qualify in any way your diagnosis about the knee? A. I don't think the diagnosis would change. I think the cause of the condition would change.

"Q. Will you explain that? A. Yes. Because in a knee, when there is an injury to a knee, in order to damage the internal semi lunar cartilage there would have to be a rather violent contact or twist, this way (indicating) and if there was no such injury in this man's case, then I don't believe that this accident was the causing factor for his knee condition."

[7] Transcript of Trial Testimony, Pages 174 to 176.

[8] Transcript of Trial Testimony, Pages 177, 178, and 179, "Q. Doctor, in your opinion, in view of the absence of any showing of osteoarthritis, or slightly showing in those bones, what would be the cause of the destruction of the semi lunar cartilage?
* * * * * * *
"A. * * * As a result of the history of the case and the demonstration which Mr. Magil gave, that it is the result of trauma, the result of some trick or something of that nature.
"Q. Doctor, is the injury to or destruction of the semi lunar cartilage a disabling factor? A. Oh, yes, sure."

536

Defendant contends that the verdict was against the evidence and the weight of the evidence. While this Court might not have reached the same conclusion as that of the jury, nevertheless, it cannot be said that the jury on the evidence before them could not have found as they did. Certainly, it cannot be said that there was no evidence to justify their findings. Incidentally, the Court submitted to the jury nine interrogatories, all of which were answered and were entirely consistent with the verdict, indicating that the attained result was not mere happenstance. Under such circumstances it cannot be said that the verdict was against the evidence and the weight of the evidence. Tennant v. Peoria & P. U. Ry., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598.

Defendant further contends that the Court erred in requiring defendant to furnish plaintiff with copies of his own statement. This procedure followed the rule established in this district in De Bruce v. Pennsylvania R. Co., D.C.E.D. Pa., 6 F.R.D. 403.

In addition to the assignments of error grouped as above, defendant contends that the Court erred in overruling defendant's objection to the admission of evidence of life expectancy of the plaintiff in the absence of admissible evidence of permanent injury to the plaintiff, and in denying defendant's motion to strike the said testimony.

To interrogatory No. 5, the jury answered that plaintiff did suffer an injury while employed by the defendant which permanently aggravated a then existing condition. In my opinion this interrogatory was properly posed. It has been repeatedly held in an action against a railroad for injuries allegedly sustained by employee, evidence whether employee's injuries were permanent was for the jury. Shelton v. Thomson, 7 Cir., 157 F.2d 709.

A fortiori, evidence of life expectancy against the possibility of the jury's finding a permanent disability as the result of the accident is admissible. Furthermore, the Court in its charge cautioned the jury that the tables had application only if they found any disability resulting from the injury which was of a permanent nature.[9]

Defendant's motion for a new trial is denied.

---

[9] Excerpt from charge, Transcript of Trial Testimony, Pages 399, 400. "On this matter of permanent injury you have been furnished with certain tables, on life expectancy for a man the age of the Plaintiff. They are only a guide to you to help you in order to determine the life expectancy of this Plaintiff. Here again assuming that you figure that there was a permanent injury and it is directly related to this incident set forth in this case, you may use them or disregard them as you see fit in your consideration as to what his life expectancy should be provided, of course, that you have found that as a result of this incident Plaintiff has suffered injuries which are of a permanent nature. Otherwise, the tables would have no significance whatsoever."