## PURVIS v. PENNSYLVANIA R. CO.
### Civ. A. 6139.

United States District Court
E. D. Pennsylvania.
June 14, 1951.

See also, 96 F.Supp. 698.

Ernest R. White, of Richter, Lord & Farage, of Philadelphia, Pa., for plaintiff.

H. Francis DeLone, F. Hastings Griffith, Jr., both of Philadelphia, Pa., for defendant.

BARD, District Judge.

In this action by Joseph J. Purvis against the Pennsylvania Railroad Company for damages for a broken rib suffered in an accident while Purvis was employed by the railroad, the jury returned a verdict of $1000 for plaintiff. It is now before me on defendant's motions for a new trial and to set aside the verdict and judgment entered thereon in accordance with defendant's motion for a directed verdict.

The only issue that is discussed in this opinion is the validity of releases signed by plaintiff.

Plaintiff was injured about 3 A.M. on October 13, 1943 while working as a brakeman in defendant's yard at Frankford Junction. During the afternoon of the same day defendant had X-ray pictures taken of plaintiff's chest. The X-rays were negative. Defendant's medical report of

October 18, 1943 indicated plaintiff was being treated for a fracture of the costrochondral junction of the ninth rib. Prior to October 25, 1943 plaintiff was either told by defendant's physicians that he was being treated for a fractured rib or overheard the doctors talking about that treatment of his injury.

On October 21, 1943 plaintiff voluntarily returned to work. It was stipulated that plaintiff did not work on October 22nd, did work on the 23rd, did not work on the 24th and did work on the 25th. Plaintiff, however, testified that he did not work on the 23rd or on the 25th.

On October 25th plaintiff went to the Broad Street Station Building[1], and consulted with one of defendant's claim agents.

At that time the claim agent phoned defendant's medical department to ascertain the extent of plaintiff's injuries. Plaintiff and the claim agent agreed that he had lost six days from work prior to the issuance of the return to duty card. In return for these lost wages, plaintiff signed a paper captioned in large letters "This Is A Release". This was a complete release of all liability.

After plaintiff signed this release, the claim agent typed out and signed a check in favor of plaintiff for $45, the approximate amount of wages agreed to have been lost. On the back of the check was this statement partly printed and partly typed in by the claim agent: "In full settlement and satisfaction of all claims, demands and causes of action resulting from physical injuries sustained while employed as Freight Brakeman, at or near Philadelphia, Pennsylvania, on or about October 13, 1943."

Later that day plaintiff indorsed that check on the line immediately below the above statement, and cashed it.

To avoid the printed release, plaintiff testified that he went down to the Broad Street Suburban Station to see the paymaster to collect his lost wages, but he admitted that nobody from the railroad

had told him to go down there for these wages, that he was not entitled to pay for days he did not work, and that he had not tried to collect these wages at Frankford Junction where he had always been paid previously. Plaintiff further testified that he inquired for the paymaster's office, that the elevator operator directed him to a certain office, that he did not remember what the sign on that office door said, that the discussion with a man in that office was about his lost wages only, that he intended to collect only these wages, that he thought he was signing the payroll as he always did when he was paid, that he had a pain in his chest, that he would not have signed a complete release, that he never saw the release and did not know he was signing a complete release, that a paper must have been over the release when it was given to him to sign, that he did not ask what he was signing, and that he made no effort to push aside the paper covering the release or to read what he was signing.

Defendant's claim agent testified that plaintiff came in his office, that the sign on his door identified it as the office of the district claim agent, that he intended the release to settle plaintiff's entire claim for personal injuries on the basis of his lost wages although he was not informed by the medical department that plaintiff had a fractured rib, and that nothing covered the release when he gave it to plaintiff or when plaintiff signed it. Defendant also produced testimony that plaintiff never signed a payroll or anything else when he received his wages at Frankford Junction.

Plaintiff made no attempt to avoid the release embodied in the statement on the back of the $45 check other than to say it all happened a few days after the accident.

Plaintiff did admit that his regular pay checks did not have any writing on the back, that nothing covered the statement on the back of the $45 check when he in-

1. Plaintiff was confused as to whether he had been to the Broad Street Station Building, the Broad Street Suburban Station, or the North Broad Street Station.

dorsed it to cash it, and that he did not read the statement when he indorsed the check.

■ It is settled law that a person who signs a contract without reading it or learning its contents is bound by its provisions. See Schoble v. Schoble, 349 Pa. 408, 411, 37 A.2d 604; Reed v. Kellerman, D.C., 40 F.Supp. 46, 50.

■ In order to set aside the printed release and the release embodied in the check, plaintiff bears the burden of proving by clear, unequivocal and convincing evidence, not merely by a preponderance of the evidence, that the releases are tainted with fraud or were entered into under a mutual mistake of fact. Schoble v. Schoble, supra; Callen v. Pennsylvania R. Co., 3 Cir., 162 F.2d 832, 833, affirmed 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242; Restatement, Contracts §§ 502, 511.

Plaintiff's testimony regarding possible fraud in his signing the printed release was given too hesitantly and has too many inconsistencies to be clear, unequivocal and convincing. When confronted with defendant's testimony, a jury verdict in favor of plaintiff would at best, it seems to me, be based only upon a preponderance of the evidence, and not upon the clear and unequivocal evidence required by the law.

Moreover, plaintiff's own admissions refute any possibility of fraud when by his indorsement he accepted the contract of release embodied in the statement on the back of the $45 check immediately above his indorsement. Plaintiff's explanation that it all happened a few days after the accident is, to me, meaningless in view of the fact that he had voluntarily returned to work four days previously.

While it may be that there was sufficient evidence of fraud surrounding the signing of the printed release in order to take that issue to the jury, no fraud was perpetrated when plaintiff indorsed the check, and there was nothing for the jury to consider in this regard.

Thus, at least the release embodied in the check cannot be set aside on the ground of fraud.

Nor can the releases be avoided on the ground of mutual mistake of fact.

Plaintiff knew that he was being treated for a broken rib when he signed the printed release and when he indorsed the check. At those times he also had a pain in his chest. Therefore, he knew or had reason to know the extent of his injuries. If the claim agent was not informed of the treatment plaintiff was receiving, then there was no mutuality; but if the claim agent was so informed, there was no mistake of fact.

Even though plaintiff may have thought he was settling only the amount of his lost wages, the claim agent intended to settle plaintiff's entire claim for damages. Therefore, no mutuality is present in this respect.

Thus, there is no mutual mistake of fact upon which plaintiff can rely to avoid the releases.

■ By his indorsement of the $45 check, plaintiff accepted the conditions under which that check was issued—a complete release or accord and satisfaction of an unliquidated dispute—and he is bound by those conditions. Honeysett v. White Co., 104 Pa.Super. 535, 159 A. 207; Blaisdell Filtration Co. v. Bayard & Co., Inc., 311 Pa. 6, 166 A. 234; Restatement, Contracts § 420; Williston, Contracts §§ 1854–1856 (Rev. Ed. 1938).

■ Accordingly, the question of setting aside the releases was improperly submitted to the jury, and defendant was entitled to a directed verdict.

It is now unnecessary for me to pass upon the merits of defendant's motion for a new trial.

Defendant's motion for a new trial is denied. Verdict and judgment thereon in favor of plaintiff is set aside. Defendant's motion for judgment in accordance with its motion for a directed verdict is granted.

An order may be submitted.