**PURVIS v. PENNSYLVANIA R. CO.**

No. 10528.

United States Court of Appeals
Third Circuit.

Argued March 18, 1952.

Decided Aug. 4, 1952.

632

B. Nathaniel Richter, Philadelphia, Pa. (Ernest R. White, Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

H. Francis DeLone, Philadelphia, Pa. (F. Hastings Griffin, Jr., Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal arises out of the second trial of this personal injury suit under the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51 et seq. There was a jury verdict in favor of the plaintiff in the sum of $1,000. Later, on the defense motion, the resulting judgment was set aside and judgment entered in favor of the defendant. D.C., 98 F.Supp. 212.

Plaintiff was hurt October 13, 1943. His main injuries apparently consisted of a laceration of the nose and a bruised rib, at first considered as a possible fracture. He returned to work eight days later, was off the next day and from then on, according to his testimony, he " * * * would be off two or three days, maybe longer than that. Sometimes it would be twelve, fifteen days." He left the employ of the railroad the following April.

The dispute at this time centers around the execution of a release to the railroad by Purvis of his claim arising out of the accident here involved. Twelve days after the accident he went to the railroad office, Broad Street Station, Philadelphia. He testified that he had been told by the head of his union to go there and collect six days' pay amounting to $48. He said he talked about his pay and agreed to take $45 instead of $48. He said that he figured the three dollar difference represented certain deductions. He admitted his signature on a release but states it must have been covered up with paper at the time he signed it. He added that he " * * * wouldn't have signed a release at the time." He was given a check for the forty-five dollars. Later that day he cashed this at the railroad cashier's cage, 32nd and Market Streets, Philadelphia. He endorsed it prior to cashing it and identified his signature on the back of the check. He says that he did not read the printed release language on the back of the check above where he signed. The claim agent of defendant with whom plaintiff dealt testified that the latter " * * * asked for payment covering his time lost. I informed him that we would have to have him sign a release, if we made any payment to him. He stated he was satisfied to accept payment in the amount shown in the release, $45. He signed the release and I wrote—typed out a check which he—which I signed."

The court let the question of the validity of the release go to the jury and submitted to that body an interrogatory in that connection reading, "Did the plaintiff know that he was signing a release in his claim for injuries?" The jury's answer to this was "No."

On the post trial motions the trial court while conceding that " * * * it may be that there was sufficient evidence of fraud surrounding the signing of the printed release in order to take that issue to the jury, * * *" held that plaintiff's endorsement of the check was a separate transaction and that "Thus, at least the release embodied in the check cannot be set aside on the ground of fraud." In line with that ruling the verdict and judgment thereon in favor of the plaintiff were set aside and defendant's motion for judgment in accordance with its motion for a directed verdict was granted.

We agree with the district judge that the validity of the release, under the

testimony, was properly a jury question but we are forced to disagree with the interpretation of the endorsement of the check as an independent act. It seems to us that the attempted disposal of the claim must be viewed as a whole—a single business transaction. Admittedly the sole subject of the talk between Purvis and the claim agent was the payment of money by the railroad to Purvis. The latter says the money simply represented six days' pay. The railroad man asserts that the payment was primarily to obtain a release of all claims of Purvis stemming from his accident. Whatever be the fact as to that, unquestionably the railroad check was given in exchange for the release. It is that check which had the release language on it above where Purvis endorsed it. Whether there was fraud in the obtainment of the release was held to be a jury question and rightly so. But as a practical matter this ruling was rendered completely ineffectual by the trial court deciding that the necessary signature to the instrument received in exchange for the release constituted a new, unrelated proceeding. Purvis, if he had known, could have insisted on receiving his forty-five dollars in cash. Whatever might be said about him agreeing to sign the release there is not the slightest evidence that he agreed to sign two releases for forty-five dollars. According to the railroad he was given what was represented as the equivalent of money in consideration of his release. In order to actually obtain his property, the forty-five dollars, he was forced to formally endorse the check but not as a reaffirmance of the release which the jury found he never signed with knowledge. We reject as unreasonable the theory of the endorsement indicating ratification of the release as a matter of law where as here Purvis at the time did not even know he had executed a release. Rockwell v. Capital Traction Co., 25 App.D.C. 98. See also Miles v. Lavender, 9 Cir., 10 F.2d 450; Penn Mutual Life Ins. Co. v. Ashton, 10 Cir., 93 F.2d 565, 567, 568; Whitmarsh v. Pennsylvania R. Co., D.C.E.D.Pa., 61 F. Supp. 850; Brown v. Pennsylvania R. Co., 2 Cir., 158 F.2d 795.

Though of but collateral interest in this particular case it is important to comment at this time on the quality of proof necessary to set aside a release in this type of action. Until Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, it had been assumed that the federal rule was that the evidence had to be clear, unequivocal and convincing. Chicago & N. W. Ry. Co. v. Wilcox, 8 Cir., 116 F. 913, 914; Restatement of Contracts, Sections 502, 511. That test was followed by us in Callen v. Pennsylvania R. Co., 162 F.2d 832. Callen was affirmed by the Supreme Court, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242, but the above precise question was not formally passed upon by the Court. In answer to the contention that the railroad should have the burden of establishing the validity of a release taken from a railroad employee under the Federal Employers' Liability Act, the Court did say, 332 U.S. at page 630, 68 S.Ct. at page 298 "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." Mr. Justice Frankfurter who had been of the majority in Callen wrote the dissenting opinion in Dice, 342 U.S. 359, 364, 72 S.Ct. 312. Mr. Justice Jackson, who wrote the Callen decision, Mr. Justice Reed and Mr. Justice Burton joined with him. The dissent agreed with the majority on reversal but thought that the case should be returned for further proceedings " * * * on the sole question of fraud in the release." 342 U.S. at page 370, 72 S.Ct. at page 318. Regarding this the dissent stated, 342 U.S. at page 369, 72 S.Ct. at page 318, "In order to prevent diminution of railroad workers' nationally-uniform right to recover, the standard for the validity of a release of contested liability must be federal." The above language from Callen was then quoted and Mr. Justice Frankfurter went on to say that, *"Such proof of fraud need be only by a preponderance of relevant evidence."* (Emphasis supplied).

We are satisfied that if and when the problem is squarely before the Supreme

634

Court the rule pronounced will be in accord with Mr. Justice Frankfurter's above quoted language and therefore, in fairness to the district judges of this circuit and to ourselves, we adopt that test for this circuit in applicable instances.

The judgment of the district court will be reversed and the case remanded for the purpose of reinstating the judgment in favor of plaintiff.

KALODNER, Circuit Judge, concurs in the result.