## SOUTH BUFFALO RAILWAY CO. *v.* AHERN ET AL.

No. 179.   Argued December 17, 1952.—Decided January 19, 1953.

*Albert R. Connelly* argued the cause for appellant. With him on the brief was *Joseph W. Marlow.*

*Roy Wiedersum,* Assistant Attorney General of New York, argued the cause for the New York State Work-

men's Compensation Board, appellee.  With him on the brief were *Nathaniel L. Goldstein,* Attorney General, and *Wendell P. Brown,* Solicitor General.

MR. JUSTICE CLARK delivered the opinion of the Court.

Disability awards by the New York Workmen's Compensation Board to an interstate railroad employee precipitate this attack on § 113 of that state's Workmen's Compensation Law as unconstitutionally conflicting with the Federal Employers' Liability Act.  While employed as a switchman by the appellant Railway, Thomas J. Ahern in July 1944 suffered a coronary occlusion as a result of unusual physical exertion in attempting to "throw a stuck switch" in the Railway's Lackawanna, New York, yards.[1]  On January 15, 1945, he filed a claim with the New York Workmen's Compensation Board, asserting disability caused by injuries sustained in the regular course of his employment.  The Railway controverted the claim solely on the grounds that his injuries were not in fact accidental, and that his disability was not causally related to the injuries alleged.[2]  A referee, after hearing evidence, resolved these issues in the claimant's favor and in September 1945 awarded him compensation at the rate of $28 per week from the date of the accident.  The Board denied the Railway's application for review and affirmed the referee's determination. In 1946 and the year following, the Board entered two further temporary disability awards.  A self-insured employer, appellant in accordance with the Board's orders

---

[1] See R. 4.

[2] R. 33, 37.  In its "Notice to the Industrial Commissioner That Claim Will Be Controverted," appellant additionally reserved "the right to controvert for such other reasons as may later appear."  R. 33.  The New York courts attached no significance to that reservation.

and without appeal to the courts of the state continued biweekly payments to Ahern until December 20, 1948. On January 3, 1949, Ahern died of his heart condition. At a subsequent hearing held shortly thereafter to determine a final disability award, the widow, appellee here, was requested to file a death claim. At that point appellant for the first time disputed the Board's jurisdiction over the subject matter of the proceeding and offered to introduce proof in support.[3] The referee rejected appellant's proffer and rendered a disability award for the two weeks preceding Ahern's death. Over appellant's contention that the claimant was employed "in interstate commerce" so that the applicability of the Federal Employers' Liability Act deprived the Workmen's Compensation Board of jurisdiction, the Board denied a petition for review.[4] The Appellate Division of the State Supreme Court upheld the award, and the Court of Appeals affirmed.[5] This decision by the highest court of the state invoked § 113 of New York's Workmen's Compensation Law which in relevant part provides that awards "may be made by the board in respect of injuries subject to the admiralty or *other federal laws* in case the claimant, the employer and the insurance carrier waive their admiralty or *interstate commerce rights and remedies . . . .*" (Emphasis added.)[6] Appellant's serious attacks on the

---

[3] R. 88–91.

[4] The Board found, in part, that appellant "by its conduct and the effect thereof on the rights of the deceased claimant . . . is now estopped from pleading the defense of the Federal Employer's Liability Act." R. 5.

[5] 303 N. Y. 545, 104 N. E. 2d 898 (1952), affirming 277 App. Div. 1067, 100 N. Y. S. 2d 639 (1950).

[6] "The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States,

constitutionality of the statute as here applied and related problems important to the administration of the Federal Employers' Liability Act prompted us to note probable jurisdiction of this case.

Collision of New York's statute with the Federal Employers' Liability Act is the crux of appellant's constitutional contentions. All agree that the injured employee, had he pursued his federal remedy, would have met the "interstate commerce" requirements of that Act.[7] But we are told that, under the New York Court of Appeals' decision, § 113 of the state Workmen's Compensation Law may translate the mere payment and acceptance of a single interlocutory compensation award into an irrevocable agreement by employer and employee to forsake their federal rights and submit their controversy to the state Board, a tribunal not only without jurisdiction but whose rules of liability clash with the uniform scheme intended by Congress in the Federal Employers' Liability Act. That being so, appellant urges, the New York Court of Appeals' construction of § 113 unconstitutionally author-

only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, provided that awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or interstate commerce rights and remedies, and the state insurance fund or other insurance carrier may assume liability for the payment of such awards under this chapter." McKinney's N. Y. Laws, Workmen's Compensation Law, § 113.

[7] "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." 45 U. S. C. § 51.

izes the Workmen's Compensation Board to invade a field foreclosed by governing federal legislation.

We do not think that the Court of Appeals roved so far afield. Rather than coin sweeping generalities, the court held that New York *permitted* the Board to render compensatory awards for employees engaged in interstate commerce only if the parties voluntarily had so agreed and "if there has been no overreaching or fraud."[8] Accordingly, the court scrupulously traced the significant factual elements in this case: Appellant from the outset was represented by able counsel well versed in the nature of its liabilities toward injured employees; it utilized the Board's administrative machinery at several hearings resulting in at least four separate awards; it made payments for four and a half years in accordance with the Board's directions, choosing not to contest the authority of the Board; it sought no judicial relief from any award save the last, when the employee's remedy under the Federal Employers' Liability Act had lapsed. In view of these facts the court concluded that manifestly the parties had agreed to invoke § 113, a purely *"permissive statute,"*[9] thereby empowering the Workmen's Compensation Board to act. And, in effect, appellant's course of conduct over the years estopped it from now asserting a flaw in the bargain: "we can conceive of no sound reason why the employer should be permitted to urge his Federal rights at this late date."[10]

We do not doubt that the Federal Employers' Liability Act, supplanting a patchwork of state legislation with a nationwide uniform system of liberal remedial rules, displaces any state law trenching on the province of the Act. State legislatures, for example, may not intrude into the

---

[8] 303 N. Y., at 555, 104 N. E. 2d, at 904.

[9] 303 N. Y., at 555, 104 N. E. 2d, at 903.

[10] 303 N. Y., at 564, 104 N. E. 2d, at 909.

federal Act's interstate commerce perimeter to destroy uniformity by arbitrarily presuming the renunciation of rights which the Act confers, or by compelling parties to elect between their federal remedies and an alternative state compensation plan. *Erie R. Co.* v. *Winfield,* 244 U. S. 170 (1917). The New York Court of Appeals, however, manifested meticulous care to avoid collision; it construed § 113 of the Workmen's Compensation Law as a mere legislative authorization, *permitting* the Board to effectuate private agreements for compromising a federal controversy by resort to an impartial local umpire—"that is all that section 113 of the Workmen's Compensation Law purports to accomplish."[11] The difference between coercion and permission is decisive; New York's jurisdictional grant, so confined, does not transgress.

To be sure, peculiarities of local law may not gnaw at rights rooted in federal legislation. *American Railway Express Co.* v. *Levee,* 263 U. S. 19, 21 (1923); *Davis* v. *Wechsler,* 263 U. S. 22, 24 (1923). Untainted by fraud or overreaching, full and fair compromises of FELA claims do not clash with the policy of the Act. *Callen* v. *Pennsylvania R. Co.,* 332 U. S. 625 (1948). The validity of such an agreement, however, raises a federal question to be resolved by federal law. *Dice* v. *Akron, C. & Y. R. Co.,* 342 U. S. 359 (1952); cf. *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239 (1942).[12] And, mindful of the benevolent aims of the Act, we have jealously scrutinized

---

[11] 303 N. Y., at 555, 104 N. E. 2d, at 904.

[12] See also *Heagney* v. *Brooklyn Eastern District Terminal,* 190 F. 2d 976, 978 (1951); *Ricketts* v. *Pennsylvania R. Co.,* 153 F. 2d 757, 759 (1946). We need not now decide whether the systematic solicitation of such agreements would run afoul of § 5 of the Federal Employers' Liability Act. "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . ." 45 U. S. C. § 55.

private arrangements for the bartering away of federal rights. *Ibid.; Boyd* v. *Grand Trunk Western R. Co.,* 338 U. S. 263 (1949); *Duncan* v. *Thompson,* 315 U. S. 1 (1942).[13] Here, however, whether motivated by charity, dislike of litigation, or trial strategy, appellant made payments until the statute of limitations barred the employee's federal claim. Fully advised of its legal rights it submitted the controversy to the Board. The New York Court of Appeals viewed these circumstances as estopping appellant from the assertion of so long delayed a change of heart. No tenet of federal law compels otherwise.

*Affirmed.*

MR. JUSTICE DOUGLAS, dissenting.

This judgment cannot be sustained on the ground that the parties were merely using the good offices of the New York Workmen's Compensation Board to compromise a claim under the Federal Employers' Liability Act. No such claim was ever asserted. The claim made charged no negligence. And no such issue was ever tendered. Yet without negligence, there is no liability under the federal Act. Moreover, this does not appear to be a situation where a claim, contested under the federal Act, is compromised, the standards of a state Act being used as the basis for the settlement. Cf. *Bay State Co.* v. *Porter,* 153 F. 2d 827; *Heagney* v. *Brooklyn Eastern D. Terminal,* 190 F. 2d 976. This claim seems to be founded on "accident" rather than on "negligence." And the claimant apparently sought relief under the New York Act because he had none under the federal Act.

But the judgment cannot be affirmed as a settlement of litigation under the New York Act. The Court held in *New York Central R. Co.* v. *Winfield,* 244 U. S. 147, that

---

[13] See *Purvis* v. *Pennsylvania R. Co.,* 198 F. 2d 631 (1952).

the remedy for personal injuries suffered by employees of interstate railroad carriers is regulated both inclusively and exclusively by the federal Act, that no room is left for state regulation, that even though the injury on which the claim is based is not attributable to negligence and therefore may not be compensated for under the federal Act, nevertheless a state may not afford a remedy. The Court held that the federal Act supplanted the state acts and established one exclusive standard of liability for interstate railroad carriers. And see *Erie R. Co.* v. *Winfield,* 244 U. S. 170, 172.

Therefore, by reason of the Supremacy Clause, a state has no power to adopt a different standard of liability for these personal injuries. It may neither force nor permit the carriers or the employees to settle these personal injury claims on a different basis than the federal Act supplies. Since the New York legislature is constitutionally barred from vesting its Workmen's Compensation Board and its courts with jurisdiction over the claim, I fail to see how they can acquire jurisdiction through consent of the parties. No waiver, consent, or estoppel should be allowed to enlarge the state domain at the expense of the overriding federal policy. Cf. *United States* v. *Corrick,* 298 U. S. 435, 440.

Mr. Justice Brandeis dissented in *New York Central R. Co.* v. *Winfield,* 244 U. S. 147, 154, in an opinion in which Mr. Justice Clarke concurred. Under his view the federal Act does not preclude a state from adding to a carrier's liability for negligence, a liability based on accident. His view is the one I would follow; and I would join four in overruling the *Winfield* cases. But they are still the law; and their holdings are in my view quite inconsistent with what the Court now does.