OPINION OF THE COURT
Myron E. Tillman, J.
Plaintiff, Erving R. Brown, is seeking to enjoin defendant, City School District of the City of Corning, New York, from preventing Ysreen Brown from attending classes at the Win-field Street School in Corning. Ysreen is presently a kindergarten student in that school, and has been attending classes since September 10, 1979. She has never received the immunizations required by section 2164 of the Public Health Law. *797 However, plaintiff contends that the exemption contained in subdivision 9 of section 2164 of the Public Health Law relieves them of the obligation to obtain the required innoculations.
On September 20, 1979, the plaintiff obtained a temporary restraining order preventing the school district from removing Ysreen from classes, and on September 25, 1979, this court determined that this application could not be resolved without a hearing.
A hearing was held on October 19, 1979, at which four witnesses testified: Erving Brown and Burdette Gleason for the plaintiffs, and Peter Crippen and Dr. John Martin for the defendant.
Subdivision 9 of section 2164 of the Public Health Law provides: "This section shall not apply to children whose parent, parents, or guardian are bona fide members of a recognized religious organization whose teachings are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.”
The constitutionality of legislation making immunization and vaccination mandatory without religious exemption is not disputed. However, the New York State Legislature decided to provide for religious exemption when it enacted the requirements for poliomyelitis vaccination in 1966. Legislative memoranda at that time revealed that the State Department of Education recommended against the religious exemption on the basis that any public health measure, in order to be effective, should provide for all children because of the danger to other children. The department recommended that the present bill be approved, but that efforts be made in the next legislative session to make immunization against poliomyelitis compulsory for all children. The Legislature has declined to adopt this recommendation, notwithstanding later consideration on that point when the subdivision was renumbered in 1975. The Legislature has clearly indicated a desire to retain the statutory religious exemption.
A strict construction of this subdivision in this case would dictate finding of discrimination as was held in Sherbert v Verner (374 US 398) and would violate the free exercise clause of the First Amendment. However, the applicable rules of law are that every legislative enactment carries a strong presumption of constitutionality. (Borden’s Co. v Baldwin, 293 US 194, 209.) Courts strike down statutes only as a last resort *798 (Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, 555, affd 344 US 367), and only when unconstitutionality is shown beyond a reasonable doubt. (Lindsley v Natural Carbonic Gas Co., 220 US 61, 79.)
The Supreme Court has recognized that parental direction in the religious upbringing and education of children, especially in their early years, has a high place in our society. (Wisconsin v Yoder, 406 US 205, 213-214.)
While the Supreme Court was interpreting a more liberal statute in United States v Seeger (380 US 163), the principles of religious beliefs discussed therein are applicable to any discussion of the free exercise clause of the first Amendment and are singularly appropriate to the plaintiff herein. In particular, in Seeger (supra, at p 185), the court, after a learned dissertation on the meaning of religion, noted "while the 'truth’ of a belief is not open to question, there remains the significant question * * * of sincerity which must be resolved in every case.”
The plaintiff herein testified, and the proof showed, that he had never received immunization himself, that to the best of his knowledge his parents and grandparents had not received immunization for religious reasons. As Mr. Brown’s testimony unfolded, it became clear that the condensation and articulation of his faith by his attorney in the affidavits previously submitted to the court did less than justice to Mr. Brown’s beliefs. Indeed, some of the terminology caused understandable confusion.
Mr. Brown received his religious training from his parents, and he said that the Bible was the cornerstone of his training. He, himself, uses the Bible regularly in the religious instruction and training of his children. His faith is based on the Bible, which he views as a "message from God.” He believes that man must live in harmony with the Bible, and he believes that man was born with a natural immunity. He testified that he does not fear disease and teaches his children to believe the same way. He believes that receiving man-made chemicals by innoculation or immunization will prevent him from attaining the hereafter, and he cites the Bible as support for his belief.
These beliefs are actively practiced in Brown’s home. He and his family have regular gatherings at which their religion and way of life are discussed, and the Bible is used to *799 strengthen their faith. They are vigorously opposed to the ingestion of all drugs.
The defendant claims that to broaden the exemption of subdivision 9 of section 2164 of the Public Health Law would open up a "Pandora’s Box” and place an impossible administrative burden upon the school district.
The Supreme Court, in Stanley v Illinois (405 US 645, 656) recognized that, "The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.”
The court’s observation of the plaintiff and his testimony convinced the court of his genuineness and the sincerity of his religious beliefs.
The free exercise of religion is a fundamental right under the Constitution and, therefore, susceptible of restriction only to prevent "grave and immediate danger” to interests which the State may lawfully protect. (Board of Educ. v Barnette, 319 US 624.)
In the case at bar, no "grave and immediate danger” was shown. Mr. Peter Crippen, the Immunization Program Coordinator for New York State Health Department, employed by the Federal Government, testified that he was unaware of any cases of diphtheria, measles, poliomyelitis, etc., in the Corning City School District. In addition, he testified that the geographic region in which the City of Corning is located has historically had the fewest number of cases indicating a danger of epidemic in the State of New York.
Mr. Burdette B. Gleason, the Superintendent of Schools in the City of Corning School District, testified that there were four children within the Corning City School District who have not been immunized (two of them on the basis of their religious beliefs).
The legislative history relative to the religious exemption from immunization reveals throughout a continuing intent to statutorily preserve, whenever possible, a coexistence of public *800 health protection and a recognition of the right of serious religious practice. Governments have reason to consider each concern as fundamental to the best welfare of their people.
The parent or guardian who comes before the court claiming exemption under subdivision 9 of section 2164 of the Public Health Law must satisfy the court on two grounds. First, the court must be satisfied as to the sincerity of the religious belief; and, secondly, that there is no present circumstance which, in the opinion of the public health authorities, represents a clear and present danger of the particular communicable disease.
This hearing has satisfied both of the above tests, and the court finds that the plaintiff comes within the spirit and, in fact, is entitled by law to the exemption provided by subdivision 9 of section 2164 of the Public Health Law.
The court grants the plaintiff’s application to preliminarily enjoin the defendant from preventing Ysreen Brown from attending school.