Emmett L. **TURNER**, Plaintiff,

v.

**NIAGARA FRONTIER TRANSPORTATION AUTHORITY and City of Buffalo, Defendants.**

No. CIV–87–397C.

United States District Court, W.D. New York.

Oct. 19, 1990.

Weissfeld, Weissfeld & Weissfeld (Richard Weissfeld, of counsel), Buffalo, N.Y., for plaintiff.

Hagerty & Hagerty (Thomas V. Hagerty, of counsel), Buffalo, N.Y., for defendant Niagara Frontier Transp. Authority.

Harrison & Gruber (John Gruber, of counsel), Buffalo, N.Y., for defendant City of Buffalo.

## FACTS

CURTIN, District Judge.

On June 3, 1986, at about 9:00 p.m., plaintiff Emmett L. Turner was involved in an accident on the vessel "Samuel Wilkeson" wherein he tripped over a rope on the deck and fell through an open hatch of the engine compartment, sustaining serious permanent injuries resulting in quadriplegia. At the time of the accident, Mr. Turner was employed by the defendant Niagara Frontier Transportation Authority ("NFTA"). The vessel was owned by the City of Buffalo ("City"), but was being chartered by the NFTA under a signed agreement. *See* Item 35, Ex. A. Plaintiff has sued both the NFTA and the City of Buffalo, alleging negligence and unseaworthiness of the vessel. Defendant NFTA has moved to file a second amended answer. Defendant City has moved for summary judgment on all counts. Both motions are opposed by plaintiff.

## DISCUSSION

### I. MOTION FOR SUMMARY JUDGMENT

Defendant City moves for summary judgment. In order to prevail on its motion, the City must show "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). "Uncertainty as to the true state of any

material fact defeats the motion." *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982) (citation omitted).

The City has advanced three arguments to support its motion. Its first argument is that a seaman's remedy for negligence under the Jones Act, 46 U.S.C.App. § 688, can only be brought against his "employer."[1] *See Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 177 (5th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982). There is no dispute that the NFTA was plaintiff's sole employer. *See* Item 43, at 1. Thus, the City of Buffalo cannot be sued for negligence under the Jones Act. This does not, however, prevent plaintiff from suing under general maritime law for the City's alleged negligence. *See Baker*, 656 F.2d at 177 ("recovery may be had in admiralty for negligence resulting in the injury of a person who is not an employee.").

Defendant's second argument is more critical. Under the general maritime law, an action for unseaworthiness may lie against the owner of the vessel. *See id.*, at 181–84. Defendant argues that, although the City was the *legal* owner of the "Samuel Wilkeson," for the purpose of determining liability for unseaworthiness, it is not liable because, at the time of the accident, it had surrendered complete command, control and possession of the vessel to the NFTA. *See Rodriguez v. McAllister Brothers, Inc.*, 736 F.2d 813, 815 (1st Cir. 1984).

In the present status of this case, defendant's argument cannot prevail. Even assuming *arguendo* that the City had relinquished complete command, control, and possession of the vessel by chartering it to the NFTA at the time of the accident, under the law of this circuit, defendant would still be liable for injuries caused by defects in the vessel that existed *prior* to commencement of the charter. *In re Marine Sulphur Queen*, 460 F.2d 89, 100 (2d

---

1. This is because the Jones Act merely incorporated the same cause of action that was made available to railroad employees under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* Under FELA, railroad employees' sole action against their employer was in negligence.

Cir.), *cert. denied, U.S. Fire Ins. Co. v. Marine Sulphur Transp. Corp.,* 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *Uni–Petrol Gesellschaft Fur Mineraloel Produkte M.B.H. v. M/T Lotus Maru,* 615 F.Supp. 78, 81 (S.D.N.Y.1985). *See also Cannella v. Lykes Bros. S.S. Co.,* 174 F.2d 794, 795 (2d Cir.), *cert. denied,* 338 U.S. 859, 70 S.Ct. 102, 94 L.Ed. 526 (1949). This principle has been upheld by other circuits as well. *See Kerr–McGee Corp. v. Law,* 479 F.2d 61, 63 (4th Cir.1973); *Ramos v. Beauregard, Inc.,* 423 F.2d 916, 917–18 (1st Cir.), *cert. denied,* 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970); *Haskins v. Point Towing Co.,* 421 F.2d 532, 536 (3d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970). Indeed, one court has even held, after extensive analysis, that an owner is liable for a vessel's unseaworthiness "without regard to whether [the] owner or bareboat charterer is responsible for the vessel's condition." *Baker,* 656 F.2d at 184. Plaintiff alleges that several conditions of unseaworthiness which may have contributed to his injury existed prior to the City's chartering of the boat to the NFTA. *See* Item 43, at 3–5 (lack of railings, guards, or coaming surrounding the engine hatch). These allegations raise a genuine issue of fact whether the vessel was unseaworthy at the time it was in the City's possession, and whether these conditions were a proximate cause of plaintiff's injury.

■ A second aspect of this argument is more troubling. Defendant asserts that NFTA, not the City, was for all intents and purposes the "owner" of the "Samuel Wilkeson" at the time of the accident, thus relieving the City of responsibility. The City relies on *Reed v. The Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963), which held that "[i]t has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called the owner *pro hac vice.*" This case merely begs the underlying question, however, whether NFTA was a bareboat charterer at the time of the accident. And this question hinges on whether the legal owner, i.e., the City, had

"completely and exclusively relinquish[ed] 'possession, command, and navigation' [of the vessel] to the demisee." *Guzman v. Pichirilo,* 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962) (quoting *United States v. Shea,* 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403 (1894)). Moreover, where a defendant owner is seeking to escape liability on the ground that it has demised the boat to a charterer, "the owner has the burden of showing such a charter. This burden is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship." *Guzman,* 369 U.S. at 700, 82 S.Ct. at 1097. *See also Fitzgerald v. A.L. Burbank & Co.,* 451 F.2d 670, 676 (2d Cir.1971).

Defendant has not carried this burden. It has argued that it

> leased the Wilkeson to the NFTA outright, reserving only the right to use it on occasion with reasonable advance notice. Under the terms of the lease, Defendant NFTA was responsible for hiring and directing the master and crew, providing fuel and supplies and making all necessary repairs to the vessel.

Item 36, at 5. Plaintiff has countered that the City's continued inspections, its right under the charter to use the vessel at any time, and the fact that the City exercised that right between August 12, 1983 and October 11, 1983 raise a genuine issue of fact whether the City had control. The court finds these facts, especially the fact the City continued to inspect the vessel and order that repairs be made to it right up to and immediately after the accident (*see* Item 43, Ex. J), sufficient to deny defendant's motion.

■ Defendant's third argument is that, by law, the ship was not unseaworthy. In *Mitchell v. Trawler Racer,* 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960), the Supreme Court, after reviewing the history of the law on unseaworthiness, concluded that

> the decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship

is absolute and completely independent of his duty under the Jones Act to exercise reasonable care.

An owner's duty is absolute even if the unseaworthy condition arises after the ship leaves its home port, or is only temporary. *Id.* Nor is the shipowner's knowledge of the unseaworthy condition relevant to liability. *Id.* Nevertheless, the owner is not required to provide a perfect ship. "The duty is absolute, but it is a duty only to furnish a vessel and appurtenances *reasonably fit for their intended use.*" *Id.* at 550, 80 S.Ct. at 933 (emphasis added).

■ Defendant and plaintiff spend a considerable portion of their briefs arguing whether Occupational Safety and Health Administration or Coast Guard regulations apply in determining whether the Samuel Wilkeson was unseaworthy. We need not decide this issue, however, because plaintiff has alleged facts sufficient for a jury to conclude that the ship was not reasonably fit. *See* Item 43, at 3–8. As the Supreme Court held in *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971):

> A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service.

*See also Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1354–55 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988) (lack of equipment rendered ship unseaworthy). Moreover, " '[u]nseaworthiness' is normally a question of fact to be determined by the jury." *Jordan v. United States Lines, Inc.,* 738 F.2d 48, 50 (1st Cir.1984); *Johnson v. Bryant,* 671 F.2d 1276, 1279 (11th Cir. 1982); *Dunlap v. G & C Towing, Inc.,* 613 F.2d 493, 496 (4th Cir.1980). *See also Morton v. Berman Enter., Inc.,* 508 F.Supp. 342, 343–45 (E.D.N.Y.1981).

Defendant also argues that the accident in this case stemmed not from a condition of unseaworthiness, but from an isolated negligent use of gear that was not inherently defective. *See Usner,* 400 U.S. at 500, 91 S.Ct. at 518. In *Usner,* a longshoreman was injured when a winch operator lowered a sling too fast, striking the plaintiff and knocking him to the deck. The Court held that since there was nothing inherently wrong with the winch or the sling, the isolated act of the winch operator did not render the ship unseaworthy. *Id.* The Court contrasted this case with the facts of *Mitchell v. Trawler Racer, Inc., supra,* in which a seaman was injured from slipping on slime and fish gurry along a ships rail. *Usner,* 400 U.S. at 500, 91 S.Ct. at 518. "[U]nseaworthiness is a *condition,*" the Court held. *Id.* at 498, 91 S.Ct. at 517 (emphasis in original).

In the present case, the alleged circumstances of unseaworthiness—improperly coiled rope, unguarded open hatch, lack of lighting—were not one-time acts of a negligent employee, but conditions of the ship. Thus, this argument also fails.

Accordingly, defendant's motion for summary judgment is denied on all counts.

## II. MOTION TO AMEND THE ANSWER.

■ Defendant Niagara Frontier Transportation Authority has moved to amend its second answer in order to reinsert the defense that plaintiff has availed himself of the State Workmen's Compensation Law, Item 41, and thus waived his federal maritime and Jones Act remedies. *See* N.Y. Work.Comp.Law § 113 (McKinney 1965). Defendant specifically moved this court to strike this defense in its Second Amended Answer. The motion was granted. *See* Item 34, Exs. A–E. Defendant notes, however, that since that motion was granted, plaintiff was granted an award by the New York State Workers' Compensation Board on May 10, 1988. Defendant argues that this award creates an issue of fact whether plaintiff "unqualifiedly" accepted his Workmen's Compensation award and thereby waived his federal remedies. Defendant

argues that, at the very least, it should have an opportunity at trial to prove that plaintiff waived his federal remedies. The court does not agree.

Under Fed.R.Civ.P. 15(a) "leave [to amend] shall be freely given when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Granting leave to amend is not, however, automatic. Courts have specifically denied such a motion where the amended pleading could be defeated by a motion to dismiss, *see Halpert v. Wertheim & Co.*, 81 F.R.D. 734, 735 (S.D.N.Y.1979); *Bruno Wine & Spirits, Inc. v. Guimarra Vineyards*, 573 F.Supp. 337, 340–41 (E.D. Wisc.1983), where the amendment would be futile, *Friedman v. New York City Dep't of Hous. & Dev. Admin.*, 688 F.Supp. 896, 899 (S.D.N.Y.1988), *aff'd*, 876 F.2d 890 (2d Cir.1989), or where the claims put forth were defective, *Valdan Sportswear v. Montgomery Ward & Co.*, 591 F.Supp. 1188, 1190 (S.D.N.Y.1984) or where there was no merit in the proposed amendments, *Health–Chem. Corp. v. Baker*, 915 F.2d 805, 809–10, (2d Cir.1990). But where plaintiff has at least "colorable" grounds for relief, most Second Circuit courts have permitted the requested amendment. *See Ryder Energy Distribution v. Merrill Lynch Commodities*, 748 F.2d 774, 783 (2d Cir.1984); *Williams v. Chase Manhattan Bank*, 728 F.Supp. 1004, 1007 (S.D.N.Y. 1990); *Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 116 F.R.D. 548, 548–49 (S.D.N.Y.1987). Testing whether a claim is "colorable" has been held comparable to the test under Fed.R.Civ.P. 12(b)(6). *CBS, Inc. v. Ahern*, 108 F.R.D. 14, 18 (S.D.N.Y. 1985); *In re Cohen*, 98 B.R. 179, 183–84 (Bankr.S.D.N.Y.1989). The standard for dismissal under Rule 12(b)(6) is quite stringent. As the Second Circuit has stated:

to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept plaintiff's allegations at face value, ... must construe the allegations in the complaint in plaintiff's favor, ... and must dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'

*Rapf v. Suffolk County of New York*, 755 F.2d 282, 290 (2d Cir.1985) (citations omitted).

■ Despite this broad standard, defendant has not met it in this case. The case law in this Circuit is clear: receipt of a Workmen's Compensation award is not a waiver of federal remedies unless there is "an unqualified acceptance of compensation payments over a period of years," *Dacus v. Spin–Nes Realty & Constr. Co.*, 22 N.Y.2d 427, 293 N.Y.S.2d 83, 86, 239 N.E.2d 718, 720 (1968), or "all of the parties elect to settle their dispute [through compensation], and forego their Federal rights and remedies," *id.* 293 N.Y.S.2d at 87, 239 N.E.2d at 721 (quoting *Matter of Ahern v. South Buffalo Ry. Co.*, 303 N.Y. 545, 555, 104 N.E.2d 898, 903 (N.Y.1952) *aff'd sub nom. South Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953)). In *Ahern*, the court specifically held that the statutory waiver of § 113 "is not to be imposed upon [petitioners] in the absence of a joint waiver or agreement evidencing an intention to be bound by its terms." *Id.* See also *Harney v. William M. Moore Bldg. Corp.*, 359 F.2d 649, 652 (2d Cir.1966); *Pederson v. Manitowoc Co.*, 25 N.Y.2d 412, 306 N.Y.S.2d 903, 906, 255 N.E.2d 146, 148 (1969) (holding "[i]t had been well established in the Federal jurisdictions that the mere acceptance of workers' compensation benefits will not bar subsequent Federal maritime actions for the same occurrence unless there is an express waiver."). Indeed, defendant admits that these "decisions shape the law of the situation at bar." Item 41, Point II.[2]

2. Defendant cites two cases in support of his motion. The first, *Gulf Oil Corp. v. O'Keeffe*, 242 F.Supp. 881, 882–83 (E.D.S.C.1965), does not support its claim. The court held that, as here, where there was "no evidence whatsoever in the record to indicate that claimant ever 'elected' to forego her federal remedy" there is no waiver.

The second case, *Murphy v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*, 545 F.2d 235, 240–41 (1st Cir.1976), simply has no bearing on this claim. First, *Murphy* involved Massachusetts' Workmen's Compensation act, not New York's. Second, the method of waiver of an employee's federal remedies in

Defendant has offered no evidence that plaintiff affirmatively waived his claim. In contrast, plaintiff has thoroughly documented that, at every step of the process, he expressly was *not* waiving his federal claims. *See* Item 34, Exs. F, G. Moreover, he fully alerted his employer of his federal claims—by bringing this suit—well prior to the acceptance of State compensation benefits. *See Morris v. Cleanco Indus. Services, Inc.*, 84 A.D.2d 592, 444 N.Y.S.2d 206, 207 (1981). Thus, defendants motion to amend is denied.

Plaintiff's request for attorney's fees responding to this motion are also denied. Counsel shall meet with the court on November 16, 1990 at 9:00 a.m. to set a further schedule.

So ordered.

Massachusetts—by failing to notify his employer when hired that he was retaining them—is directly opposite New York's requirement of affirmative waiver. And, third, there was no question that plaintiff had waived his federal rights under Massachusetts' law.